FILED'08 AUG 27 15:15 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RONALD L. SANDERS,                                        CV-07-621-MA

        Plaintiff,                                   OPINION AND ORDER

   v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

---

JODIE ANNE PHILLIPS POLICH
PO BOX 220119
Milwaukie, OR  97269
(503) 654-1388

    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
District of Oregon
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1158

L. JAMALA EDWARDS
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-3749

    Attorneys for Defendant

1- OPINION AND ORDER

MARSH, Judge:

The matter before the Court is Plaintiff, Ronald Sanders', Social Security complaint, seeking judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), and Supplemental Security Income benefits (SSI) under Title XVI of the Act. 42 U.S.C. §§ 401-33, 1381-83f. For the reasons that follow, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

## BACKGROUND

Sanders applied for benefits on March 4, 2003, alleging he became disabled March 8, 2002 due to bipolar disorder, severe depression, arthritis, neck and back pain, and blackout spells. As the Administrative Law Judge (ALJ) noted, this was Sanders' second application for benefits. He first applied for benefits March 13, 2002. That application was denied and Sanders did not appeal the denial. Since the first application covered Sanders' records through September 27, 2002 and there is no basis for reopening the old application, the ALJ determined that the period under review in the instant application was September 27, 2002, until the date of the ALJ's written decision, June 28, 2006. Sanders does not dispute this finding.

A hearing was held before an ALJ November 15, 2005, after Sanders' applications were denied initially and upon

reconsideration. Sanders, who was represented by an attorney at the hearing, was 43 years old at that time. He had a general equivalency diploma and past work as a cook, kitchen manager, maintenance manager, landscaper, and mechanic. On June 28, 2006 the ALJ issued a written decision finding Sanders not disabled. On February 27, 2007 the Appeals Council denied review, making the ALJ's June 28, 2006 decision final.

On appeal to this Court Sanders alleges the ALJ erred by: (1) wrongly rejecting the opinion of Michael Thein, M.D., that Sanders is unable to work; (2) erroneously concluding that drug use was "material" to Sanders' impairments; and (3) wrongly rejecting Sanders' credibility.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The

3- OPINION AND ORDER

Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert denied,* 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at steps one through four. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §§ 404.1512, 416.912. Each step is potentially dispositive.

4- OPINION AND ORDER

Here, at step one the ALJ found Sanders had not engaged in substantial gainful activity since his alleged disability onset date. See 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two the ALJ found Sanders had the following severe impairments: degenerative lumbar and cervical disc disease, borderline intellectual functioning, bipolar disorder, anxiety disorder, and substance abuse disorder. See 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three the ALJ found Sanders' impairments met the criteria of listed impairments 12.04, 12.06 and 12.09, considered so severe as to automatically constitute disability. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). However, the ALJ determined that Sanders' substance abuse was a "material" factor to this finding. See 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J) (claimant not entitled to benefits if drug addiction or alcoholism "material" to finding of disability). In other words, the ALJ determined that Sanders would not meet the criteria for these listed impairments if he stopped using drugs and alcohol. See 20 C.F.R. §§ 404.1535(b), 416.935(b). Accordingly, the ALJ proceeded with the sequential evaluation.

The ALJ determined that, when the affects of substance abuse were removed from the equation, Sanders had the residual functional capacity (RFC) to perform light work, limited by only simple, repetitive tasks, no interaction with the general public,

no frequent overhead reaching and no noisy environments. See 20 C.F.R. §§ 404.1520(e), 416.920(e), 404.1545, 416.945, 404.1567, 416.967.

At step four the ALJ found that even without the affects of substance abuse, Sanders could not return to his past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

At step five the ALJ found Sanders could perform other work existing in significant numbers in the national economy if he was not abusing drugs and alcohol, such as agriculture products sorter, basket filler, and blindstich machine operator. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(40(v), 416.920(g).

## DISCUSSION

Sanders contends the ALJ erred by finding his testimony and the medical opinions based on his subjective reports were not reliable. According to Sanders, the ALJ did not point to substantial evidence to support the conclusion that he continued to use methamphetamine during the period under review, and she thereby erred in concluding that drug use was a material factor in Sanders' functional impairment. Sanders also argues that the ALJ had no basis for finding that Sanders' alleged head injury, which he claimed was the cause of his mental functional impairments, was a "fabrication."

6- OPINION AND ORDER

The ALJ rejected Sanders' credibility for multiple clear and convincing reasons. *Holohan v. Massanari*, 246 F. 3d 1195, 1208 (9th Cir. 2001)(citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). The ALJ found many of Sanders' statements to be inconsistent, starting with his explanation for why he stopped working as a cook at Applebee's. Sanders testified before the ALJ that he suffered a severe head injury from a motor vehicle accident in 2003, which caused him to "blackout and I went [to work] in my shorts and T-shirt and tried to cook and they thought I was drunk and they fired me." Evidently the manager called the police and Sanders was taken to jail overnight because the police also believed he was intoxicated. In any event, other reports indicate Sanders quit his job because his salary was reduced, and still other reports have Sanders saying he believes he is still capable of working.

The ALJ noted that the record did not contain any medical evidence substantiating Sanders' alleged head injury. At the hearing Sanders testified that the automobile accident that caused the injury happened because he blacked out, which would mean the blackouts were not caused by the accident, as he alleged. Sanders also seemed to remember what happened during the "blackout." He told the ALJ that he "was driving by Wal-Mart and I was going to [sic] fast and I think I hit a car and I wanted to get away so I stepped on it and I went around the

7- OPINION AND ORDER

corner and I rolled it." According to police reports Sanders was taken to a hospital pending arrest because they thought he was driving under the influence of intoxicants. However, the record indicates that Sanders left the hospital against medical advice to elude authorities and was never examined for head trauma. Accordingly, no medical records substantiate his claimed head injury.

The claimant bears the burden of establishing a medically determinable impairment that could reasonably cause the symptoms alleged. 20 C.F.R. §§ 404.1508, 416.908 (to show a "medically determinable physical or mental impairment" the claimant must proffer "medical evidence consisting of signs, symptoms, and laboratory findings," not simply his own subjective statement of symptoms). In the absence of any such evidence I find the ALJ reasonably concluded that Sanders did not meet this burden, and therefore that he did not have a medically determinable head injury.

Since Sanders failed to establish that he suffered from a head injury, but the record did support a finding that Sanders continued to use methamphetamine and marijuana during the period under review, the ALJ surmised that any "blackouts" Sanders may have suffered were caused by drug abuse. The blackout episodes were based entirely on Sanders' self-reports, but the drug abuse is substantiated by multiple reports showing that Sanders was

using drugs throughout the period he was treated by Dr. Thein, though Sanders was not forthcoming with Dr. Thein in this regard. Sanders was incarcerated multiple times for drug-related crimes in 2002, 2003 and 2004, he was taking a double-dose of methadone in August 2002, he tested positive for methamphetamine in December 2004, he entered a residential treatment facility in March 2005 where he reported that he used methamphetamine on a weekly basis until December 2004, he tested positive for drugs in April 2005, and he admitted to the ALJ that he only stopped socializing with his methamphetamine buddy a few months before the hearing, in November 2005. Throughout this time Sanders was often non-compliant with the medications prescribed by Dr. Thein. At times he took handfuls of the medication and overdosed, at other times blood testing revealed Sanders did not have therapeutic levels in his system and he was unable to account for the missing medication.

Unaware of most of the above, Dr. Thein diagnosed Sanders with schizoaffective disorder of a bipolar type, social anxiety disorder, and a cognitive disorder. He opined that Sanders had such marked difficulty in all areas of social functioning and in his ability to interact with co-workers, supervisors and the public, that he would meet the criteria for several listed impairments, as mentioned above.

9- OPINION AND ORDER

In rejecting Dr. Thein's opinion, that ALJ adopted the testimony of medical expert Susan Dragovich, Ph.D., who concluded that Dr. Thein's diagnoses were flawed because he did not know about Sanders' ongoing drug abuse, and because Dr. Thein accepted Sanders' unsubstantiated self-report that he had undergone a head injury. As Dr. Dragovich noted, on many dates Dr. Thein thought Sanders was sober other evidence in the records shows he was actively using drugs. Dr. Dragovich concluded that Dr. Thein attributed Sanders' nervous, odd behavior to a social anxiety disorder, yet these behaviors are very common among methamphetamine users. She also noted that Dr. Thein's references to Sanders having a long history of social anxiety dating back to his teenage years was not substantiated. She found that during the short periods Sanders was medically compliant and sober his symptoms "seem to go into remission." Further, Dr. Dragovich testified that Dr. Thein mistakenly believed Sanders started out as a "highly intelligent...individual who's showing cognitive problems attributed to a head injury." Yet, Dr. Dragovich found no basis for this conclusion, noting that testing only evinced "borderline intellectual functioning," which was also consistent with the types of jobs Sanders has held, and "the way he's lead his life...". The ALJ noted that Sanders was enrolled in special education classes during high school.

10- OPINION AND ORDER

Dr. Dragovich also concluded that even before Sanders' alleged onset of disability, before the automobile accident that allegedly caused a head injury, several medical providers concluded that Sanders was drug-seeking, and they wanted to titrate him off narcotics, which were not indicated to treat any of his verifiable medical impairments.

In sum, I find that the ALJ rejected Dr. Thein's diagnoses and functional capacity assessment for clear and convincing reasons. *Rodriguez v. Bowen*, 876 F.2d 759, 761-62 (9th Cir. 1989) (ALJ must give clear and convincing reasons to reject a treating physician's opinion). Based on Dr. Dragovich's testimony, I find the ALJ reasonably concluded that drug use was a "material factor" contributing to Sander's functional impairments, and that if Sanders was not using illicit drugs, and was medically compliant, he would be capable of doing work existing in substantial numbers in the national economy.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this **27** day of August, 2008.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge

11- OPINION AND ORDER